UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

Plaintiff,

-against-

ANTHONY MORGAN,

Defendant.

**MEMORANDUM AND ORDER**
Case No. 1:24-cr-371 (FB)

*Appearances:*
*For the Government:*
MEGAN LARKIN
Assistant United States Attorney
271 Cadman Plaza East
Brooklyn, NY 1120

*For the Defendant:*
NORA K. HIROZAWA
Federal Defenders of New York
1 Pierrepont Plaza, 16th Floor
Brooklyn, NY 11201

**BLOCK, Senior District Judge:**

Defendant Anthony Morgan moves for termination of his term of supervised release, which the government and Probation Department oppose. This case marks the first opportunity for the Court to consider and apply the factors promulgated under Section 5D1.4 of the new Sentencing Guidelines, enacted this past November 1, 2025, in determining when modification or termination of supervised release is warranted. Having considered them, the Court decides that the defendant's motion should be **GRANTED**.

## I.

In 2019, Morgan was arrested for felon gun possession, 18 U.S.C. § 922(g)(1). He had been transporting a loaded AR15 assault rifle in a bag when arrested. The affidavit and complaint in support of his arrest warrant explained:

> [A]fter being read and voluntarily waiving his Miranda rights, the defendant stated that people "jumped" him at a party earlier that night and took his money; that he went to his "stash" at a friend's house to get the suitcase with the gun to return to where he was jumped to use the gun; the gun was loaded; he had the gun for security; he knew the police were chasing him; and he almost got away.

*United Sates v. Morgan*, 19-CR-308 (E.D.N.Y. March 12, 2019), ECF No. 1, ¶ 5.

Morgan pleaded guilty to one count of felon gun possession, 18 U.S.C. § 922(g)(1), and, in January 2020, was sentenced by Judge Glasser to 47 months' imprisonment, followed by three years of supervised release. Two years later, he was transferred to a residential reentry center ("RRC") and was scheduled for release on July 1, 2022.[1] However, on or about April 21, 2022, with less than three months remaining on his sentence, Morgan left the RRC without authorization and did not return.

Morgan was later arrested, whereupon he finished the remaining three months of his original sentence and was thereafter charged with one count of

---

[1] The record does not indicate why Morgan was transferred to the RRC or why he was set to be released after serving approximately 30 months of his 47-month sentence, but Bureau of Prisons decisions to place inmates in RRCs are governed by 18 U.S.C. 3621(b), which provides factors to determine where and when prisoners are placed. Placement in an RRC is generally done to help inmates transition back into the community following a prison sentence.

escape from custody, 18 U.S.C. § 751(a), a class D felony. *See* 18 U.S.C. § 355(a). Morgan pleaded guilty before me and, on November 1, 2024, based on the recommendation of the Probation Department, I sentenced him to time served, which amounted to 48 days of incarceration. In imposing the sentence, I stated that I had considered, without specification, the requisite 18 U.S.C. § 3553(a) factors. Sentencing Tr. 26, Nov. 1, 2024. The § 3553(a) factors cover issues such as "deterrence, public safety, rehabilitation, proportionality, and consistency[.]" *United States v. Lussier*, 104 F.3d 32, 35 (2d Cir. 1997). A district court, however, need not make specific findings as to each factor so long as the judge has considered them and adequately explained the sentence. *United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008); *United States v. Fernandez*, 443 F.3d 19, 30 (2d Cir. 2006).

In addition, I imposed two years of supervised release, although I could have imposed up to three years for a class D felony. *See* 18 U.S.C. § 3583(b). In retrospect, I should have noted that I also considered the relevant § 3553(a) factors in fashioning my term of supervised release because, under 18 U.S.C. § 3583(e)(1), a court may, once a defendant has completed at least one year of supervised release, terminate the term of supervised release if, after considering all but two of the same § 3553(a) factors that it was required to consider in imposing the term,

3

the judge "is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice[.]"

The § 3553(a) factors that are not relevant when considering supervised release are factors (a)(2)(A) and (c), since they address punishment, which is not the purpose of supervised release. 18 U.S.C. § 3583(e) (listing the factors to consider). *See United States v. Aldeen*, 792 F.3d 247, 252 (2d Cir. 2015), as amended (July 22, 2015) ("Supervised release is not, fundamentally, part of the punishment; rather, its focus is rehabilitation.").

Morgan's term of supervised release included only the standard conditions; no special conditions were imposed. ECF No. 15. Relevant here are the conditions that he not commit any local, state, or federal crime, that he not unlawfully use or possess any controlled substance, and that he secure lawful employment. *Id*.

Morgan has now completed approximately thirteen months of his twenty-four-month term of supervised release. Immediately following his release from custody to begin his term of supervised release, he entered the New York City shelter system. In January 2025, Morgan began working for the company Fresh Direct in a temporary role. In recognition of his diligent work, he was promoted to a permanent role with Fresh Direct, which position he still holds. Morgan has also, at times, held a second job. Because of his stable employment, Morgan was able to secure a rent-stabilized apartment and leave the shelter.

However, while on supervised release he has tested positive for marijuana. His marijuana use was flushed out by the Court during a hearing held on this motion. Status Conf. Tr., 16, Jan. 15, 2026. Probation Officer Ogir reported that the Probation Department conducted a drug test on November 20, 2025, that came back positive for marijuana. *Id*. The Department did not, however, recommend that any action be taken by the Court.

In addition, Officer Ogir reminded the Court that on December 16, 2024, Probation had submitted a report to the Court documenting three positive marijuana tests on November 4, 15, and 26, 2024, all within the first month of the commencement of supervised release. *Id*. ECF No. 17. The Department had similarly recommended that no action be taken with respect to these positive tests. ECF No. 17, 18. Defense counsel has also represented—and the government does not dispute—that Morgan, on his own initiative, has participated in an outpatient drug rehabilitation program, which has helped him with his marijuana dependence and helped him abstain from alcohol. Def.'s Mot., 4, ECF No. 19; Def.'s Resp., 4, ECF No. 24.

Officer Ogir further advised the Court at the hearing: "I haven't had any issues with Mr. Morgan. He's made positive strides, such as maintaining stable and verifiable employment." Status Conf. Tr. 14. And Probation Officer Chetuck, who currently supervises Morgan, told the Court, "Since he started supervision with me

he's done well. He continues to hold two jobs. I've done multiple visits to his residence. I haven't observed any safety concerns. He remains in contact with me." *Id.* at 15.

## II.

Under § 3583(e)(1), district courts are to consider general § 3553(a) sentencing factors in determining when modification or termination of supervised release is appropriate. That statute does not give district courts guidance as to the factors that are particularly pertinent in deciding when supervised release should be modified or terminated. Section 3553(a)(5), however, directs the Court to consider "any pertinent policy statement . . . issued by the Sentencing Commission." In its updated Guidelines Manual issued November 1, 2025, the Sentencing Commission has filled this void in new Section 5D1.4.

Section 5D1.4 provides six factors for courts to consider in determining whether to terminate a term of supervised release:

i. any history of court-reported violations over the term of supervision;
ii. the ability of the defendant to lawfully self-manage (*e.g.*, the ability to problem-solve and avoid situations that may result in a violation of a condition of supervised release or new criminal charges);
iii. the defendant's substantial compliance with all conditions of supervision;
iv. the defendant's engagement in appropriate prosocial activities and the existence or lack of prosocial support to remain lawful beyond the period of supervision;

     v.     a demonstrated reduction in risk level or maintenance of the lowest category of risk over the period of supervision; and

     vi.     whether termination will jeopardize public safety, as evidenced by the nature of the defendant's offense, the defendant's criminal history, the defendant's record while incarcerated, the defendant's efforts to reintegrate into the community and avoid recidivism, any statements or information provided by the victims of the offense, and other factors the court finds relevant.

Preliminarily, it is useful to have a firm grasp of the history and purposes of sentencing and supervised release.

The principal § 3553(a) factors the court must consider for both sentencing and supervised release, are (1) "the nature and circumstances of the offense and the history and characteristics of the defendant[;]" and (2) "the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]"

The Supreme Court has explained that "[t]hese four considerations-- retribution, deterrence, incapacitation, and rehabilitation--are the four purposes of

7

sentencing generally, and a court must fashion a sentence 'to achieve the[se] purposes . . . to the extent that they are applicable' in a given case." *Tapia v. United States*, 564 U.S. 319, 325, 131 S. Ct. 2382, 2387 (2011) (quoting 18 U.S.C. § 3551(a)).

The applicability of each factor depends upon which of the Court's four main sentencing options—imprisonment, supervised release, probation, or fines—is under consideration. For example, on the one hand, a court may not impose or lengthen a prison term to promote rehabilitation. *Id*. at 332; 18 U.S.C. § 3582(a). And on the other hand, a court may not take account of retribution when imposing a term of supervised release. *Tapia,* 564 U.S. at 326. These statutory restrictions reflect Congress's understanding of the different penological purposes of the various forms of punishment. *Id*. ("These provisions make clear that a particular purpose may apply differently, or even not at all, depending on the kind of sentence under consideration.").

Although courts are forbidden from considering rehabilitation when determining whether to imprison an offender, or when setting the length of imprisonment, courts are required to consider this factor when considering supervised release. *See* 18 U.S.C. § 3583(c), (e) (directing courts to consider rehabilitative ends, such as the need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in

the most effective manner," when imposing, modifying, or terminating supervised release). As the Supreme Court has explained, "[s]upervised release, in contrast to probation, is not a punishment in lieu of incarceration." *United States v. Granderson*, 511 U.S. 39, 50 (1994). Indeed, the Supreme Court noted, when reviewing the legislative history of § 3583, that "the goal of supervised release is 'to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or other purposes but still needs supervision and training programs after release.'" *Johnson v. United States*, 529 U.S. 694, 709, 120 S. Ct. 1795, 1805 (2000) (quoting S. Rep. No. 98-225, p. 124 (1983)). Accordingly, Congress has directed courts "to determine which defendants would benefit from the rehabilitative purposes of supervised release." *Id*. at 345. Those who no longer need the rehabilitative purposes of supervised release may qualify for early termination.

There have been constructive and informative discourses on the goals of rehabilitation. Criminologists Francis T. Cullen and Cheryl Lero Jonson define rehabilitation as "a planned correctional intervention that targets for change internal and/or social criminogenic factors with the goal of reducing recidivism and, where possible, of improving other aspects of an offender's life." Francis T. Cullen & Cheryl Lero Jonson, *Rehabilitation and Treatment Programs*, in *Crime*

9

*and Public Policy* 293, 295 (James Q. Wilson & Joan Petersilia eds., 2011). Cullen

further identified three basic aims of rehabilitative correctional interventions: first,

to reduce recidivism; second, to identify the causes of crime and to change or cure

them; and third, to improve the well-being of offenders. Francis T. Cullen,

*Correctional Rehabilitation*, in *Reforming Criminal Justice: Punishment,*

*Incarceration, and Release* at 239 (Erik Luna ed., vol. 4, 2017).

The notion that rehabilitation is or should be part of a correctional

philosophy can be traced back to the end of the 18th century, when Enlightenment

thinkers began to write about the penitentiaries being constructed on both sides of

the Atlantic. Jeremy Bentham (famous for dreaming up the Panopticon) was one of

the earliest reformers to recognize that, if it is "possible for the delinquent to return

to society, it is proper that the punishment should possess qualities calculated to

reform" him or her. Michele Pifferi, *The Historical Origins and Evolution of*

*Rehabilitative Punishment*, 53 *Crime & Justice* 103, 109 (2024) (*quoting* Jeremy

Bentham, *The Rationale of Punishment*, 20–21 (R. Heward 1830)).

The rehabilitative ideal made its most notable early appearance in the United

States when the National Congress on Penitentiary and Reformatory Discipline

convened in 1870 to discuss and debate the state of the nation's prisons. The

Congress drafted a Declaration of Principles in which "leading prison

administrators and reformers reaffirmed that 'the supreme aim of prison discipline

is the reformation of criminals, not the infliction of vindictive suffering.'" Cullen, *Correctional Rehabilitation*, 241 (*quoting* Nat'l Congress on Penitentiary & Reformatory Discipline, *Declaration of Principles Promulgated at Cincinnati, Ohio, 1870, in* Prison Reform: Correction and Prevention 39, 39 (Charles Henderson ed., 1910)). Much of our correctional system was developed in the decades following, as Progressive Era reformers sought to devise institutions to effectuate the Declaration's principles:

> Sentencing became more indeterminate and led to the creation of parole boards that were assigned the task of deciding when inmates had been cured and could be safely released. Probation and parole supervision were logical necessities because offenders in the community needed help to avoid crime and, if unsuccessful at that task, policing to be sent to prison. Pre-sentence reports, which would document the life details of offenders and be compiled by probation officers, were essential to assist judges in determining whom to incarcerate and whom to keep in the community. Finally, a separate juvenile justice system devoted only to treatment was essential if wayward children were to be saved.

*Id.* at 241–242.

The extent to which our modern system effectuates rehabilitation is subject to debate. Academics have argued that, since the 1970s, rehabilitation has been put on the back burner in favor of more punitive and retributive correctional policies. *See* Michelle S. Phelps, *Rehabilitation in the Punitive Era: The Gap Between Rhetoric and Reality in U.S. Prison Programs*, 45 *Law & Soc. Rev.* 33 (2011). Nevertheless, rehabilitation remains one of the four foundational priorities of sentencing and is the primary aim of supervised release.

11

### III.

With this conceptual overview, the Court now turns to applying the new 5D1.4 factors, which support termination here. In the thirteen months since Morgan began his term of supervised release, he has secured stable, independent housing after first living in a shelter, he has secured regular employment, and he has attended a drug rehabilitation program, which all support Morgan's ability to lawfully self-manage (factor two). Morgan's pursuit of stable employment, and the fact that he was promoted from a temporary to permanent position with his employer, constitute "appropriate prosocial activities" (factor four). Similarly, the ability to maintain this employment for a full year, coupled with efforts to address his history of alcohol and marijuana dependence, support a finding that Morgan has demonstrated a reduction in risk level (factor five).

The government's principal argument in opposing Morgan's motion is his criminal history, which it contends jeopardizes the public's safety under factor six. But that history predates Morgan's term of supervised release. Morgan's criminal history was relevant to my decision in fashioning the initial term of supervised release. I could have imposed up to three years of supervision but decided that two years would suffice.

Implicit in that decision was that Morgan would need that period of supervision to facilitate his rehabilitation and reentry into society. But now he has

proven to the court that he was able to accomplish that in less time. Fashioning the period of supervised release is an aspirational goal; reality should be determinative when assessing a motion for termination. In determining whether to terminate his supervised release, Morgan's post-supervised release rehabilitation is the relevant factor; his past history was the relevant factor in fixing the original term of supervised release.

This is not to say that a defendant's criminal history may never be a determinative factor. Indeed, there are crimes that are so horrendous that the maximum period of supervision may be warranted, and modification or termination should never be considered. *See*, *e.g.*, Block, *A Second Chance: A Federal Judge Decides Who Deserves It,* Ch. 13. That is not this case, as reflected by the fact that I did not impose the maximum period of supervised release notwithstanding a less than exemplary prior history.[2]

The government contends that termination is not warranted because Morgan has not demonstrated any "changed circumstances" under *Lussier*, 104 F.3d at 36. The Second Circuit has, however, rejected the notion that a change in circumstances is always required. In *United States v. Parisi*, 821 F.3d 343, 347 (2d.

---

[2] The Probation Department's pre-pleading investigation report informed the Court that Morgan's criminal history included five prior convictions, including two felonies. ECF No. 12, 5–8. The first felony was in 2001, when Morgan was 18, for attempted robbery in the second degree. *Id*. at 5. The second felony was the above-described felon firearm possession conviction in 2019. *Id*. at 7. Morgan was apprehended following his escape because of two assaults he allegedly committed in March 2024 that were reported to the police. However, he was never prosecuted for these alleged acts, and there is no evidence of his culpability.

13

Cir. 2016), the court explained that "*Lussier* . . . does not require new or changed circumstances relating to the defendant in order to modify conditions of release but simply recognizes that changed circumstances may in some instances justify a modification." The Second Circuit has made clear that "so long as the court, when modifying supervised release conditions, considers the relevant 18 U.S.C. § 3553(a) sentencing factors, there is no additional requirement that it make a finding of new or changed circumstances with respect to the defendant." *Id.*[3] In any event, Morgan's rehabilitation by securing permanent employment and housing constitutes a significant change in his circumstances.

Morgan's rehabilitation has been exemplary. He has nailed the goal of his supervised release by pulling himself up from the bowels of homelessness to become a functioning member of society with verifiable full-time employment and the financial ability to secure decent housing. And he has earned the support of his probation officers.

But he has had one glitch—his apparent addiction to marijuana. Although marijuana use is now legal in New York and most states,[4] it is still a federal crime. Because the conditions of supervised release require Morgan not to possess or use

---

[3] The government's argument that *Parisi* is inapposite because it dealt with a modification of the terms of supervised release, rather than termination, is also unavailing because the government contends that *Lussier* controls, which *also concerned a modification of the terms of supervised release*. In any event, the same basic considerations apply to modifications and terminations of supervised release. *See* 18 U.S.C. § 3583(e).

[4] Recreational use is legal in 24 states and the District of Colombia; most other states have legalized medical marijuana and/or decriminalized possession of small amounts of marijuana. Marijuana is completely outlawed in only seven states. *See States*, Marijuana Policy Project, https://www.mpp.org/states/.

any controlled substances, Morgan's use of marijuana technically constitutes a violation of a term of his supervised release. *See United States v. Hicks,* 722 F. Supp. 2d 829, 837 (E.D. Mich. 2010) (concluding that possession of marijuana is a violation of the terms of supervised release, even when such possession is legal under state law).

As pertinent here, 18 U.S.C. § 3583(g) provides for mandatory revocation of supervised release if the defendant possesses a controlled substance or tests positive for illegal controlled substances more than three times in a year. Thus, fewer than four positive drug tests in a year does not compel a court to revoke a term of supervised release. And a positive drug test, without more, does not necessarily equate to possession of a controlled substance requiring revocation of supervised release. *United States v. Jackson*, 510 F. App'x 149, 156 (3d Cir. 2013) ("[A] positive drug test did not require revocation of supervised release under § 3583(g) if the court did not find the circumstantial evidence of drug use sufficient to demonstrate possession."). If that were not the case, there would be no reason for § 3583(g) to provide that either possession or more than three positive tests are grounds for mandatory revocation. Additionally, the Court notes that no federal court in New York is sentencing marijuana smokers to jail, and no federal prosecutor's office in New York is indicting anyone for this federal crime.

Moreover, the Probation Department never recommended that Morgan's supervised release be revoked or, indeed, that any action be taken, in response to his drug tests. His probation officers were satisfied with monitoring his habit, especially since he has voluntarily participated in a drug rehab program. They have confirmed that Morgan has been fully compliant with his conditions of supervision and are supportive of his extraordinary rehabilitation. Thus, the Court declines to use Morgan's handful of positive tests for marijuana as a factor in deciding whether termination of supervised release is warranted. There is simply no need to further burden the Probation Department and waste valuable resources by continuing Morgan on supervised release.

The purpose of supervised release is not to punish the defendant, as with a prison sentence, but to assist in the defendant's rehabilitation and transition back into the community after incarceration. *United States v. Granderson*, 511 U.S. 39, 50 (1994); *United States v. Aldeen*, 792 F.3d 247, 252 (2d Cir. 2015). In Morgan's case, it has accomplished that goal. The Court has considered all the 3553(a) and 5D1.4 factors and concludes that termination is warranted by "the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1).

## Conclusion

For the foregoing reasons, Morgan's motion for termination of his term of supervised release is **GRANTED**.

**SO ORDERED.**

_/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
February 12, 2026